IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LOUIS MENDY,[1] A97519625                          *
                    Petitioner,
          v.                                       *    CIVIL ACTION NO. AW-05-1763

THE UNITED STATES DEPARTMENT OF         *
 HOMELAND SECURITY, BUREAU OF
 IMMIGRATION AND CUSTOMS                 *
 ENFORCEMENT,
                    Respondent.          *
                                         ******

## MEMORANDUM

Louis Mendy is being held in Department of Homeland Security, Bureau of Immigration and

Customs Enforcement ("ICE") custody at the Dorchester County Detention Center in Cambridge,

Maryland awaiting deportation.  On June 27, 2005, he filed this 28 U.S.C. § 2241 Petition for Writ

of Habeas Corpus claiming that his continued ICE detention violates the dictates of *Zadvydas v.*

*Davis*, 533 U.S. 678 (2001).

Respondent[2] has filed a Response and Motion to Substitute Respondent. Paper No. 3.

Petitioner has filed a Reply.  Paper No. 4.  No oral argument is necessary because the parties have

fully briefed the issues.  *See* Local Rule 105.6 (D. Md. 2004).  For the reasons stated below, the

Court will, by separate Order, dismiss the Petition for Writ of Habeas Corpus.

### I. Background

Plaintiff is a native and citizen of an unknown country.  He was admitted into the United

---

[1]        The Clerk shall be directed to amend the docket to reflect the correct name of Petitioner Louis Mendy.

[2]        The Clerk shall be directed to substitute Steven R. Williams, Warden Dorchester County Detention Center as Respondent. *Rumsfeld v. Padilla*, 524 U.S. ___, 124 S.Ct. 2711 (June 28, 2004) (the proper Respondent to a "pure detention" Petition for Writ of Habeas Corpus by a detained alien is the warden of the detention facility where the alien is detained.)

States at New York, New York on March 3, 1994, under the Visa Waiver Program[3] using a French passport bearing the name Louis Mendy. Paper No. 3, Ex. A.  While incarcerated at Rikers Island in New York, having been convicted of twelve counts of third degree trademark counterfeiting, Petitioner was identified by ICE and interviewed.  He alleged that he was a native and citizen of France and made no claims of any fears if returned to France. *Id*., Ex. 1. He also had a prior conviction for third degree assault.  Petitioner was not entitled to have a hearing before an Immigration Judge ("IJ") and on December 17, 2004, he was ordered removed by ICE pursuant to the  terms of the Visa Waiver Program. *Id*., Ex. 2.

On November 22, 2004, prior to his coming into ICE custody, ICE attempted to obtain travel documents from the French Embassy.  *Id*., Ex 3.  During an interview with an ICE Agent at Rikers Island Petitioner told the Agent that he was a native and citizen of France, born in Paris, and his foreign address was in Paris.  He did not provide a street address.  He stated that his mother's name is Teresa Mendy and that she lives in France. He stated that both his parents are French. He refused to sign the written statement presented to him.  *Id*.

Since taking custody of Petitioner on December 15, 2004, ICE has continued to attempt to secure travel documents. On January 4, 2005, ICE received a letter from the Consulate General of France stating that in order to issue a travel document for Petitioner the consulate would need to know the name of the town he was born in France and his whereabouts prior to his arrival in the United States. ICE informed the Consulate General that Petitioner claimed he was born in Paris, France on April 4, 1958.  On February 3, 2005, the Consulate General of France interviewed Petitioner.  *Id*.  On February 18, 2005, ICE received correspondence from the Consulate General

---

[3]8 U.S.C. §1187(b); 8 C.F.R. §217.4(a).

stating that no birth certificate was found for Petitioner at the town hall.  The Consulate General requested a copy of Petitioner's passport.  ICE provided the Consulate General the passport number since they did not possess the actual passport.  *Id*.

On July 18, 2005, Petitioner was again interviewed by the Consulate General of France.  As result of that interview, the Consulate General concluded that Petitioner's answers were vague and that the office was unable to locate his birth certificate or any other identity documents.  The Consulate General indicated they were still trying to ascertain whether the passport number contained in Petitioner's passport was genuinely issued to him.  The interviewer stated that most likely Petitioner was not from France.  *Id*.  After this interview, a Deportation Officer confronted Petitioner and asked him directly whether he had been dishonest about his citizenship. Petitioner assured the Deportation Officer that he was French from birth and had never been outside of France or the United States. *Id.*

The Deportation Office detected two material discrepencies between Petitioner's answers given in his initial interview by ICE at Rikers Island and his interview in July of 2005 with the Consulate General.  Specifically,  Petitioner told ICE that his mother's name was Teresa but during the July, 2005 interview stated that her name was Maria. Additionally, he had previously maintained that he was born in Paris, France,  but in the July 18, 2005 interview claimed he was born in Martinique, a French colony. *Id*.

After noting these discrepancies the Deportation Officer contacted Petitioner's wife, Lenora Griffin, by telephone.  She stated that Petitioner had listed Senegal as his country of birth on their marriage certificate.  *Id*..  ICE obtained a copy of the marriage certificate which lists Petitioner's place of birth as Senegal.  *Id*., Ex. 4.

On July 29, 2005, the Deportation Officer again confronted Petitioner regarding his country of birth.  Petitioner admitted he was born in Senegal.  *Id.*, Ex. 3.  Petitioner stated that he did not have any identity documents from Senegal.  Petitioner was instructed to contact family and friends in order to obtain identity documents.  ICE then began preparing an application to obtain travel documents for Petitioner from the Embassy of Senegal.  *Id*.

On July 26, 2005, ICE issued a Notice of Failure to Comply Pursuant to 8 C.F.R. § 241.4(g) advising Petitioner that he would not be released from custody at that time, due to his failure to comply with his obligation to make a timely and good faith effort to obtain a travel document. *Id.*, Ex. 5.

## II. Analysis

The law dealing with the detention of deportable aliens is found in 8 U.S.C. § 1231, which is supplemented by various subsections of 8 C.F.R. § 241.  DHS is expected to remove the alien within 90 days following the entry of a final order of removal. 8 U.S.C. § 1231(a).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that post-removal order detention under 8 U.S.C. § 1231(a) is implicitly limited to a period reasonably necessary to bring about the alien's removal from the United States and does not permit indefinite detention.  In sum, the Supreme Court found that after a order of deportation became final, an alien may be held for a six month period.  After this period:

> [o]nce the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably

4

foreseeable future.

*Zadvydas*, 533 U.S. at 701.

Petitioner was ordered removed on December 17, 2004.  Paper No. 3, Ex. 2.  Accordingly, the *Zadvydas* presumptively reasonable six-month period would have expired on  June 17, 2004. The post order 90 day removal period, and the *Zadvydas* six month presumptively reasonable detention period, are however, suspended  where an "alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."  Section 241(a)(1)(C) of the INA, 8 U.S.C. § 1231(a)(1)(C); *see also* 8 C.F.R. §§ 341.4(g)(5)(i)-(iv).

On December 8, 2004, Petitioner was first interviewed  by ICE. During that interview he claimed that he was from France, born in Paris to  Teresa Mendy, a citizen of France.  He continued to maintain that he was born in Paris, France while failing to provide any proof that he was a native and citizen of France.  During his July 18, 2005 interview by the French Consulate General, he gave vague answers and was unable to articulate how he obtained a French passport.  At this time he stated that he was born in Martinique and that his mother's name was Maria.  Subsequently, ICE discovered, through their own investigation and not through any disclosure by Petitioner, that he claimed on his marriage certificate to have been born in Senegal. In the instant Petition, he claims to be a native and citizen of France and states that he was not convicted of any crime while residing in the United States, a claim belied by the record.  The foregoing demonstrates that Petitioner has lied to ICE and the French Consulate regarding his citizenship. He has given vague, misleading, contradictory, and incorrect information throughout his detention thus preventing the issuance of travel documents.  Petitioner has failed to cooperate in good faith  with ICE's efforts to secure travel

documents.   Accordingly,  the *Zadvydas* six month presumptively reasonable detention period has been tolled.  INA § 241(a)(1)(C), 8 U.S.C. 1231(a)(1)(C); *see also Lema v. INS*, 341 F.3d 853, 857 (9th Cir. 2003); *Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir. 2003).  Until such time as Petitioner completely and honestly answers Respondent's inquiries regarding his citizenship, truthfully providing all of the information reasonably within his knowledge,  he cannot sustain his burden that there is no significant likelihood of removal in the reasonably foreseeable future.  In sum, Petitioner is precluded from making a *Zadvydas* issue of his continued post-removal-order detention when he is, for all intents and purposes, the controlling timekeeper.  *Abdel-Muhti v. Ashcroft*, 314 F.Supp.2d 418, 427-28 (M.D.  Pa. 2004); *Powell v. Ashcroft*, 194 F.Supp.2d 209, 210-11 (E.D. N.Y. 2002). Accordingly, the Court finds no constitutional or statutory violation in Petitioner's detention at this time.

## III. Conclusion

In light of the foregoing the Petition for Habeas Corpus relief shall be dismissed.  A separate Order follows.

 October 12, 2005          _____"s"_____
    Date                   Alexander Williams, Jr.
                           United States District Judge